**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------x
MIGUEL PINEDA, SAMUEL EDGERTON, ERIN BAILEY,
MARCIA GARCIA, JOHN IZARPATE, MAXIMILIAN
ARIAS, ALEXANDRA BOCK, JACOB BOGATIN,
THOMAS FESTO, MARC AUERBACH, MICHAEL
COOKE, DERRIEK WILLIAMS, NESTOR MARMOL,
KATSUMI FUNAHASHI on behalf of themselves and all
others similarly situated,

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Case No.:  1:19-cv-03168

PLAINTIFFS DEMAND
A TRIAL BY JURY

                              Plaintiffs,

            -against-

DIQUE PIC PRODUCTIONS LLC, MARTI HINES, JASMIN
GREENE, JASON HIGHTOWER,
                              Defendants.
-------------------------------------------x

Plaintiffs, Miguel Pineda, Samuel Edgerton, Erin Bailey, Marcia Garcia, John Izarpate,

Maximilian Arias, Alexandra Bock, Jacob Bogatin, Thomas Festo, Marc Auerbach, Michael

Cooke, Derriek Williams, Nestor Marmol, Katsumi Funahashi on behalf of themselves and all

others similarly situated, by their attorneys, The Rose Law Group, PLLC and Conde & Glaser

LLP, upon information and belief, complain as follows:

## NATURE OF THE CASE

1.      Plaintiffs, individually and on behalf of all other similarly situated current and former

hourly employees of Defendants, brings this action against Defendants pursuant to the

Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ("FLSA") and the New York State

Labor Law, Articles 6 & 19 ("NYLL") for failure to pay wages due and owed for hours

employees were required to report to work, ready to perform work and actually

performed work duties, and seeks to recover unpaid back wages, unpaid tips, unpaid

overtime, an additional amount as liquidated damages, reasonable attorneys' fees and

costs.

2.    Plaintiffs further claim that they were not compensated properly under the New York City Administrative Code ("NYC Charter"), Title 20: Consumer Affairs, Chapter 10 § 20-927 *et seq*. for failure to provide an appropriate written contract under § 20-928; failure to pay on time under § 20-929; and retaliating against Plaintiffs as made illegal under § 29-930.

3.    Plaintiffs also claim that they were not provided the proper notices and statements under New York Labor Law §§ 190 *et seq*.

## JURISDICTION AND VENUE

4.    Jurisdiction of this action is conferred upon the Court by § 16(b) of the FLSA (29 U.S.C. §216(b)). Jurisdiction of this Court is also proper under 42 U.S.C. §12101 et. seq.; 29 U.S.C. §2617.

5.    Supplemental Jurisdiction is proper over the State law claims pursuant to 28 U.S. Code § 1367.

6.    Venue is proper in this district based upon Defendants' having conducted significant business within the Southern District of New York where most of the movie was shot and many of Plaintiffs' residencies being within the Southern District of New York. 28 U.S.C. §1391(b).

## PARTIES

7.    That at all times relevant hereto, Plaintiffs  Miguel Pineda, Samuel Edgerton, Erin Bailey, Marcia Garcia, John Izarpate, Maximilian Arias, Alexandra Bock, Jacob Bogatin, Thomas Festo, Marc Auerbach, Michael Cooke, Derriek Williams, Nestor Marmol, Katsumi Funahashi ("Plaintiffs") are residents of the State of New York.

8.    Plaintiffs were, during all relevant times, employees for Defendants and were contracted by Defendants to provide freelance work during the production of a movie.

9.      That at all times relevant hereto, Defendant Dique Pic Productions, LLC ("Dique") was and is a Limited Liability Company duly authorized and existing by virtue of the laws of the State of California with a principle business address of 625 N Flores St., Apt 201, Los Angeles, California 90048. Upon information and belief, Defendant Dique was not authorized to do business in New York.

10.     That at all times relevant hereto, Defendant Dique does business as a movie production company and was making a movie titled Paper Friends in New York City.

11.     Defendant Marti Hines ("Hines") was and is an individual who owned and operated Defendant Dique during the relevant period. Defendant Hines was an employer under the FLSA and NYLL. Defendant Hines had the power to hire and fire Plaintiffs and controlled the terms of their employment including pay.  Defendant Hines was a hiring party under the NYC Charter.

12.     Defendant Jasmin Greene ("Greene") was and is an individual who owned and operated Defendant Dique during the relevant period. Defendant Greene was an employer under the FLSA and NYLL. Defendant Greene had the power to hire and fire Plaintiffs and controlled the terms of their employment including pay. Defendant Greene was a hiring party under the NYC Charter.

13.     Defendant Jason Hightower ("Hightower") was and is an individual who was a producer for Defendant Dique during the relevant period. Defendant Hightower was an employer under the FLSA and NYLL. Defendant Hightower had the power to hire and fire Plaintiffs and controlled the terms of their employment including pay. Defendant Hightower was a hiring party under the NYC Charter.

## THE FLSA CLASS

14.    While class certification pursuant to FRCP Rule 23 is not required for an FLSA collective action, defining the class of eligible FLSA Plaintiffs is useful, as the Court will be asked to order Defendants to produce the names and addresses and other information of potential opt-in Plaintiffs.

15.    The class of eligible opt-in Plaintiffs consists of all persons who worked for Defendants as "freelancers" at any time on the production of the movie "Paper Friends", to entry of judgment in this case (the "Class" and "Class Period," respectively).

16.    Although the precise number of putative class members is unknown, and facts upon which the calculation of that number is based are presently within the sole control of Defendants, upon information and belief, there are over forty (40) members of the Class who worked for Defendants within the Class Period.

17.    There are questions of law and fact common to this Class which predominates over any questions solely affecting individual members of the Class, including whether Defendants failed to compensate employees at any rate for hours employees were required to be at work and performing work.

18.    Plaintiffs' claims are typical of the claims of the Class.   Plaintiffs will fairly and adequately protect the interests of the Class.

19.    A collective action is superior to other methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual Plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate Defendant.

20.     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

21.     At all times relevant to this action, Plaintiffs and other Class Plaintiffs were employed by Defendants within the meaning of the FLSA.

22.     At all times relevant to this action, Defendants transacted and transacts commerce and business in excess of $500,000.00 annually or has revenues in excess of $500,000.00 annually, for all applicable periods in question. Further, Plaintiffs handled goods moved in interstate commerce.

23.     At all times relevant to this action, Defendants willfully failed to pay all Plaintiffs and other Class Plaintiffs for time which Class Plaintiffs are required to be at work, ready to work, and performing work in violation of the FLSA. Plaintiffs were also not paid the overtime premium for hours worked in excess of twelve (12) in a single day.

24.     At all times relevant to this action, due to Defendants' FLSA violations, Plaintiffs and other Class Plaintiffs are entitled to recover from Defendants their unpaid wages, an additional equal amount as liquidated damages, attorneys' fees, and costs of the action, pursuant to 29 U.S.C. §216(b).

## THE RULE 23 NYLL & FREELANCE CLASS

25.     Plaintiffs also bring this action on behalf of themselves and all other persons similarly situated pursuant to Rule 23(b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

26.     The class of eligible Plaintiffs consists of all persons who worked for Defendants as on the Paper Friends movie shoot who are not paid in violation of the NYLL and Freelance Workers Law under the NYC Charter ("Rule 23 Class").

27. As the members of the Rule 23 Class are numerous and of an unknown number, joinder of all members is impracticable. The precise number of such persons is unknown, but believed to be over forty (40), and the facts on which the calculation of that number are presently within the sole control of the Defendant.

28. Upon information and belief the number of potential members of the Rule 23 Class exceeds forty (40).

29. Plaintiffs' claims are typical of the claims of the Rule 23 Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy — particularly in the context of wage and hour litigation where individual Plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate Defendant.

30. Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

31. Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in employment law and class action litigation.

32. Plaintiffs have the same interests in this matter as all other members of the Rule 23 Class and Plaintiffs' claims are typical of the Rule 23 Class.

33. There are common questions of law and fact affecting all members of the Rule 23 Class which predominate over any questions only affecting the individual members of the Rule 23 Class, including but not limited to:

    a. Whether Defendants employed the members of the Rule 23 Class within the meaning of the NYLL and NYC Charter;

    b. Whether Defendants failed and/or refused to pay the members of the Rule 23 Class anything for their work;

c.  Whether Defendants failed to provide contracts appropriately as required by §20-928;

d.  Whether Defendants retaliated by threatening anyone who agreed to bring claims against them for failing to pay them on time; and,

e.  Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated, punitive and statutory damages, interests, costs and disbursements and attorneys' fees.

34.  This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(2), since the unlawful actions of Defendant, as alleged herein, has been taken on grounds equally applicable to all members of the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

35.  Alternatively, this action is maintainable as a class action under Fed. R. Civ. P. 23(b)(1)(A), as the prosecution of separate actions by individual members of the Rule 23 Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Rule 23 Class, which would establish incompatible standards of conduct for Defendants who oppose the Rule 23 Class.

36.  Alternatively, this action is maintainable as a class action under Fed. R. Civ. P. 23(b)(3) as common questions of law and fact described above predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversies between the parties.

37.  The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedure that violate the NYLL.

**MATERIAL FACTS**

38.  Plaintiffs, Class Plaintiffs, and Rule 23 Class Plaintiffs were all hired by Defendants to work

on the production and shooting of a movie called Paper Friends.

39.    Plaintiff Miguel Pineda was hired by Marti Hines as a Boom Operator for the Defendants to work on a feature film called Paper Friends. Plaintiff Pineda was refused a written contact detailing the work agreement by the Defendants to work on the film. Plaintiff Pineda received an email agreement on May 30, 2018 to work on the film on June 23, 2019. Plaintiff Pineda was promised to get paid a total of $2,400.00 on June 29, 2018. Plaintiff Pineda never received the money owed to him from the Defendants.

40.    Plaintiff Samuel Edgerton  was hired by Jason Hightower as a Gaffer for the Defendants to work on a feature film called Paper Friends. Plaintiff Edgerton signed a written agreement on June 10, 2018 to work on the film on June 23, 2018 for the Defendants. Plaintiff Edgerton was contracted to get paid a total of $3,850.00 on June 30, 2018. The contract provided by the Defendants stated that Plaintiff Edgerton will receive an overtime rate of a time and a half for every hour worked over twelve (12) hours in one day. Plaintiff Edgerton was required to work over twelve (12) hours on June 23, 2018 and thus owed an overtime premium, per the written contract agreement, for all hours worked over twelve (12). Plaintiff Edgerton is owed a total of $172.96 for his overtime hours. Plaintiff Edgerton never received the money owed to him from the Defendants.

41.    Plaintiff Marcia Garcia was hired by Marti Hines as a Key Grip, the head of the Grip Department, for the Defendants to work on a feature film called Paper Friends. Plaintiff Garcia received an email agreement on May 30, 2018 to work on the film on June 23, 2019. Plaintiff Garcia was only provided a written contact detailing the work agreement by the Defendants to work on the film after persistently requesting it numerous times. Plaintiff Garcia was promised to get paid a total of $3,500.00 on June 29, 2018. Plaintiff Garcia never received the money owed to her from the Defendants.

42.   Plaintiff Erin Bailey was hired by Jason Hightower as an additional Electrician for the Defendants  to work on a feature film called Paper Friends. Plaintiff Bailey signed a written agreement on June 25, 2018 for her work on the film on June 20, 2018 for the Defendants. Plaintiff Bailey was contracted to get paid a total of two hundred dollars ($200) on June 29, 2018. Plaintiff Bailey never received the money owed to her from the Defendants.

43.   Plaintiff John Izarpate  hired by Jason Hightower as the Best Boy Electric for the Defendants to work on a feature film called Paper Friends. Plaintiff Izarpate signed a written agreement on June 20, 2018 to work on the film on June 23, 2018 for the Defendants. Plaintiff Izarpate was contracted to get paid a total of $2,850.00 on June 29, 2018. The contract provided by the Defendants stated that Plaintiff Izarpate will receive an overtime rate of a time and a half for every hour worked over twelve (12) hours in one day. Plaintiff Izarpate was required to work over twelve (12) hours on June 23, 2018 and thus owed an overtime premium, per the written contract agreement, for all hours worked over twelve (12). Plaintiff Izarpate is owed a total of $151.35 for his overtime hours. Plaintiff Izarpate never received the money owed to him from the Defendants.

44.   Plaintiff Maximilian Arias was hired by Marti Hines as a Boom Operator for the Defendants to work on a feature film called Paper Friends. Plaintiff Arias was refused a written contact detailing the work agreement by the Defendants to work on the film. Plaintiff Arias received an email agreement on May 30, 2018 to work on the film on June 23, 2019. Plaintiff Arias was promised to get paid a total of $3,141.55 on June 29, 2018. Plaintiff Arias never received the money owed to him from the Defendants.

45.   Plaintiff Alexandra Bock  was hired by Jason Hightower as the Director of Photography to work on a feature film called Paper Friends. Plaintiff Bock was asked to work on the film as a B Camera Operator. Plaintiff Bock was promised by the Defendants a payment of

$3,141.67 for her work on the film. Plaintiff Bock was told by the Defendants she would receive payment by July 2, 2018 via an email agreement on June 20, 2018. Plaintiff Bock never received any money owed to her from the Defendants.

46.    Plaintiff Jacob Bogatin was hired by Jason Hightower as an additional Grip for the Defendants to work on a feature film called Paper Friends. Plaintiff Bogatin signed a written agreement on June 18, 2018 for his work on the film on June 14, 2018 and June 16, 2018 for the Defendants. The contract provided by the Defendants stated that Plaintiff Bogatin will receive a daily rate of two hundred dollars ($200.00) for a twelve (12) hour work day with an overtime rate of time and a half for every hour worked over twelve (12) hours in one day. Plaintiff Bogatin worked on the film for two (2) days with .63 hours of overtime. Plaintiff Bogatin's hours worked on the film totaled to four hundred and twelve dollars and eighty five cents ($412.85). Plaintiff Bogatin was contracted to get paid on July 16, 2018. Plaintiff Bogatin never received the money promised and contracted to receive from the Defendants.

47.    Plaintiff Thomas Festo was hired by Defendant Hightower as an additional Electrician for the Defendants to work on a feature film called Paper Friends. Plaintiff Festo signed a written agreement on June 16, 2018 to work on the film on June 16, 2018 for the Defendants. Plaintiff Festo was contracted to get paid a total of $212.85 on July 16, 2018. Plaintiff Festo never received the money owed to him from the Defendants.

48.    Plaintiff Marc Auerbach was hired by Lauren Owen as a Locations Manager for the Defendants to work on a feature film called Paper Friends. Plaintiff Auerbach was refused a written contact detailing the work agreement by the Defendants to work on the film. Plaintiff Auerbach received an email agreement on April 17, 2018 to work on the film Paper Friends. Plaintiff Auerbach was promised to get paid $420 per day for 25 days for a total of $10,500.00. These 25 days started from April 18th and included the film shoot days from

June 11th to June 23rd 2018. During the shoot Plaintiff Auerbach paid out of pocket a total

of $150 for location expenses. Plaintiff Auerbach also paid out $800 which was money

owed to one of his assistants by the Defendants. Plaintiff Auerbach was paid a total of

$3,300.00 on June 23, 2018 at the end of the film shoot. Plaintiff Auerbach never received

the rest of the money owed to him by the Defendants, totaling a remaining balance of

$8,150.00.

49.   Plaintiff Michael Cooke  was hired by Marti Hines as a Cinematographer for the Defendants

to work on a feature film called Paper Friends. Plaintiff Bailey signed a written agreement

on May 14, 2018 to work on the film on May 22, 2018 for the Defendants. Plaintiff Cooke

was contracted to get paid a total of $7,329.44 on May 28, 2018. In a separate invoice,

Defendants paid Plaintiff Cooke's company a total of  two thousand dollars ($2,000) for his

camera rental for the film. The payment of two thousand dollars ($2,000) was sent to a

separate LLC that Plaintiff Cooke co owns. Plaintiff Cooke never received the money owed

to him by the Defendants for his services.

50.   Plaintiff Derriek Williams was hired by Jason Hightower as a Digital Imaging Technician

for the Defendants to work on a feature film called Paper Friends. Plaintiff Williams signed

a written agreement on June 25, 2018 for his work on the film on June 20, 2018 for the

Defendants. Plaintiff Williams was contracted to get paid a total of two hundred and fifty

dollars ($250) on June 29, 2018. Plaintiff Williams never received the money owed to him

from the Defendants.

51.   Plaintiff Nestor Marmol was hired by Marti Hines as a Digital Imaging Technician for the

Defendants to work on a feature film called Paper Friends. Plaintiff Marmol signed a written

agreement to work on the film on June 23, 2018 for the Defendants. Plaintiff Marmol was

contracted to get paid a total of $3,700 on June 29, 2018.  Plaintiff Marmol was only paid

six hundred dollars ($600) for his services and Defendants deducted one hundred and eight dollars and eighty-one cents ($108.81) from the total payment to pay for a backup battery Plaintiff Marmol used on set. Plaintiff Marmol never received the rest of the money owed to him by the Defendants.

52.    Plaintiff Katsumi Funahashi was hired by Marti Hines as a Best Boy Grip for the Defendants to work on a feature film called Paper Friends. Plaintiff Funahashi was responsible for organizing grip equipment for the Key Grip. Plaintiff Funahashi was refused a written contact detailing the work agreement by the Defendants to work on the film. Plaintiff Funahashi received an email agreement on May 30, 2018 to work on the film for two hundred and twenty five dollars ($225) per day for twelve (12) hour days until June 23, 2019. Plaintiff Funahashi was promised to get paid a total of $2,816.79 on June 29, 2018 for his services on the film. Plaintiff Funahashi never received the money owed to him from the Defendants.

53.    Defendants hired additional workers who were required to perform work yet were not paid.

54.    When asked about when they would be paid, Defendants made false promises on multiple occasions, failing to compensate Plaintiffs for their work.

55.    Defendants acknowledged that they owe this money to all Plaintiffs, Class Plaintiffs, and Rule 23 Class Plaintiffs.

56.    Defendants claim that the reason that the payments were not made was due to a funding problem, however, they chose to proceed with filming without funding to pay the people they were hiring to perform work.

57.    Defendant Hines sent an email on or about February 15, 2019 stating that for "those of you that have acted like you have no sense of home training or decency I promise you, you will be paid last."

58.    Upon information and belief, this threat was meant to indicate that Plaintiffs, Class Plaintiffs, and Rule 23 Class Plaintiffs who demanded to be paid on time would be punished for demanding payment.

59.    Plaintiffs on their own and others' behalf sent numerous emails demanding payment, including filing complaints with the New York City Department of Consumer Affairs.

60.    This constituted a threat and retaliation.

61.    Defendants have made other statements similar to this which constitute retaliation under the NYLL and NYC Charter.

62.    Defendants are and were employers under the FLSA and NYLL as they control the work performed by individuals who suffered under their violation of the law, made the decision to specifically violate the law and have an ownership stake in the company. As such, Defendants are jointly and severally liable for the wage and hour violations detailed herein.

63.    Plaintiffs were not provided accurate and truthful wage statements and notices which complied with New York Labor Law § 190 *et seq* during their employment.

### AS A FIRST CAUSE OF ACTION
### <u>VIOLATION OF THE FAIR LABOR STANDARDS ACT</u>

64.    Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

65.    Defendants willfully employed Class Plaintiffs in the afore-mentioned enterprise and failed to compensate Class Plaintiffs for all hours worked during their employment.

66.    Defendants failed to pay any wages for hours worked by Class Plaintiffs as described herein and as is required by the FLSA.

67.    Further, the average hourly rate for Plaintiffs was below the minimum wage when considering the numerous hours for which they were not compensated.

68.    Defendants also failed to provide the overtime premium rate of one and a half times their

regular hourly rate as is required by the FLSA.

69.    Defendants' failure to comply with the FLSA caused Plaintiffs and Class Plaintiffs to

suffer loss of wages and other damages as described and demanded herein.

## AS A SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW

70.    Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of

this complaint as if same were set forth herein fully at length.

71.    Plaintiffs were employees of Defendants within the meaning of New York Wage

Regulations (NYCRR Labor Section 138 et seq.).

72.    Defendants failed to pay Plaintiffs any rate of pay for certain hours when they were

required to be at work, ready to work, actually performing work and/or traveling to/from

work sites.

73.    Defendants' failure to comply with the New York Labor Law minimum wage protections

caused Plaintiffs to suffer loss of wages and interest thereon.

74.    Defendants' failure to pay proper wages for each hour worked was willful.

75.    Defendants also failed to pay overtime pay as is required by the New York Labor Law.

76.    Defendants also failed to provide tips paid by clients which were to be delivered to

Plaintiffs but were not.

77.    Defendants withheld money for vehicular tickets and damages to furniture from

Plaintiffs' pay without legal right or justification.

78.    Defendants also withheld money when days were missed from work in violation of the

law.

79.    On account of such violations, Defendants are liable to Plaintiffs for actual, statutory and

liquidated damages.

## AS A THIRD CAUSE OF ACTION FOR
## VIOLATION OF NEW YORK LABOR LAW (wage notice and statement)

80.    Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

81.    At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§ 190 et seq., including §§ 191, 193, 195, 198 and the applicable regulations thereunder.

82.    At all times relevant herein, Defendants, individually and/or jointly, failed and willfully failed to provide Plaintiff with the notice(s) required by NYLL 195(1) – Plaintiffs are therefore entitled to and seek to recover in this action the maximum recovery for this violation, plus attorneys' fees and costs pursuant to NYLL 198 including NYLL 198(1-b).

83.    At all times relevant herein, Defendants, individually and/or jointly, failed and willfully failed to provide Plaintiff with the statement(s) required by NYLL 195(3) – Plaintiffs are therefore entitled to and seeks to recover in this action the maximum recovery for this violation, plus attorneys' fees and costs pursuant to NYLL 198 including NYLL 198(1-d)

## AS AND FOR A FOURTH CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW (retaliation)

84.    Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

85.    Plaintiffs complained about their not being paid and filed complaints with the New York City Department of Consumer Affairs.

86.    In response, Defendant Hines sent emails threatening them and letting them know that they would receive their pay last.

87.    Plaintiffs are entitled to punitive damages, liquidated damages, injunctive relief and

attorneys' fees and costs.

## AS AND FOR A FIFTH CAUSE OF ACTION
### VIOLATION OF NYC CHARTER § 20-928

88.   Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of

this complaint as if same were set forth herein fully at length.

89.   The New York City Charter provides that:

a.   Whenever a hiring party retains the services of a freelance worker and the contract
between them has a value of $800 or more, either by itself or when aggregated with all
contracts for services between the same hiring party and freelance worker during the
immediately preceding 120 days, the contract shall be reduced to writing. Each party to
the written contract shall retain a copy thereof.

b.   The written contract shall include, at a minimum, the following information:

1.   The name and mailing address of both the hiring party and the freelance worker;

2.   An itemization of all services to be provided by the freelance worker, the value of
the services to be provided pursuant to the contract and the rate and method of
compensation; and

3.   The date on which the hiring party must pay the contracted compensation or the
mechanism by which such date will be determined.

§ 20-928.

90.   The Charter provides that in a civil action under this section entitles a plaintiff to:

a.   A plaintiff who prevails on a claim alleging a violation of section 20-928 shall be
awarded statutory damages of $250.

b.   A plaintiff who prevails on a claim alleging a violation of section 20-928 and on
one or more claims under other provisions of this chapter shall be awarded
statutory damages equal to the value of the underlying contract for theviolation of
section 20-928 in addition to the remedies specified in this chapter for the other
violations.

§ 20-933(b)(2).

91.   As described herein, Defendants failed to comply with this law and are liable for

damages.

16

## AS AND FOR A SIXTH CAUSE OF ACTION
## VIOLATION OF NYC CHARTER § 20-929

92.    Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of

this complaint as if same were set forth herein fully at length.

93.    The New York City Charter provides:

    a.    Except as otherwise provided by law, the contracted compensation shall be paid
          to the freelance worker either:

        1.    On or before the date such compensation is due under the terms of the
              contract; or

        2.    If the contract does not specify when the hiring party must pay the
              contracted compensation or the mechanism by which such date will be
              determined, no later than 30 days after the completion of the freelance
              worker's services under the contract.

    b.    Once a freelance worker has commenced performance of the services under the
          contract, the hiring party shall notrequire as a condition of timely payment that
          the freelance worker accept less compensation than the amount of the contracted
          compensation.

94.    Plaintiffs are entitled to, "[i]n addition to any other damages awarded pursuant to this

chapter, a plaintiff who prevails on a claim alleging a violation of section 20-929 is

entitled to an award for double damages, injunctive relief and other such remedies as may

be appropriate." § 20-33(b)(3).

95.    Plaintiffs are entitled to unpaid wages, double damages, liquidated damages, injunctive

relief and attorneys' fees and costs.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## VIOLATION OF NYC CHARTER § 20-930

96.    Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of

this complaint as if same were set forth herein fully at length.

97.    The  New York City Charter provides:

No hiring party shall threaten, intimidate, discipline, harass, deny a work opportunity to
or discriminate against a freelance worker, or take any other action that penalizes a

17

freelance worker for, or is reasonably likely to deter a freelancer worker from, exercising or attempting to exercise any right guaranteed under this chapter, or from obtaining future work opportunity because the freelance worker has done so. § 20-930.

98.     Defendants violated the Charter as described herein.

99.     Plaintiffs are entitled to punitive damages, compensatory damages, liquidated damages, injunctive relief and attorneys' fees and costs.

## JURY DEMAND

100.    Plaintiffs demand a trial by jury.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants:

A.  Certifying a Collective Class for all Class Plaintiffs and permitting notice be sent to all Class Plaintiffs with the option to join;

B.  Awarding all wages not paid as required under the FLSA, NYLL, and NYC Charter, plus liquidated damages under both the FLSA, NYLL, and NYC Charter and interest;

C.  Declaring that Defendants' policies and procedures violate the FLSA, NYLL, and NYC Charter;

D.  Awarding damages and double damages to the Plaintiffs, Class Plaintiffs, Rule 23 Class Plaintiffs to otherwise make them whole for any losses suffered as a result of such unlawful employment practices;

E.  Awarding Plaintiffs punitive damages and/or liquidated damages;

F.  Awarding Plaintiffs attorney's fees, costs, and expenses incurred in the prosecution of the action; and,

G.  Awarding Plaintiffs such other and further relief as the Court may deem equitable, just and

proper to remedy the Defendants' unlawful employment practices.

Dated: Astoria, New York
        April 9 , 2019

**THE ROSE LAW GROUP, PLLC**

Jesse C. Rose
3109 Newtown Avenue, Ste 309
Astoria, New York 11102
(718) 989-1864


**CONDE & GLASER LLP**

Marion Conde da Silveira
299 Broadway, 17th floor
New York, NY 10007
(212) 385-9300
